# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LIGHTSPEED MEDIA CORPORATION | ) | |
| | ) | CASE NO.: |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Judge: |
| | ) | Magistrate Judge: |
| DOES 1 – 100 | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| | ) | |

## COMPLAINT

Plaintiff, by and through its attorneys and for its Complaint against Defendants, avers as follows:

## INTRODUCTION

1. This action has been filed by Plaintiff to combat the willful and intentional infringement of its copyrighted creative works and includes a civil claim for copyright infringement. Defendants, whose names Plaintiff expects to ascertain during discovery, illegally reproduced and distributed Plaintiff's copyrighted creative works via computer networks and upon information and belief continue to do the same.

2. Plaintiff seeks a permanent injunction, damages, and all other relief provided under the Copyright Act.

## THE PARTIES

3. Plaintiff, Lightspeed Media Corporation (hereinafter "Lightspeed Media"), is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business located in Phoenix, Arizona. Plaintiff is the exclusive owner of the copyrights at issue in this Complaint.

4.      Lightspeed Media is a prominent company within the adult entertainment industry and has been the subject of articles in the national mainstream media. The company's founder and owner is a fixture at industry conferences and has delivered keynote addresses at the same. Lightspeed Media operates over 30 unique websites, employees several individuals and has invested significant capital in developing its content. Plaintiff is the owner of the copyrights and the pertinent exclusive rights under copyright in the United States in audiovisual works and photographs, including collections relating to its *Jordan Capri* and *Tawnee Stone* website properties.

5.      Defendants' actual names are unknown to Plaintiff. Instead, each Defendant is known to Plaintiff only by an Internet Protocol address (hereinafter "IP address"), which is a number that is assigned to devices, such as computers, that are connected to the Internet. In the course of monitoring Internet-based infringement of its copyrighted content, Plaintiff observed each of the IP addresses listed on <u>Exhibit A</u> hereto engaging in infringing activity. Plaintiff believes that the Defendant's true identities will be revealed in discovery, at which time Plaintiff will seek leave of the Court to amend this Complaint to state those identities, if necessary. Further, Plaintiff believes that the information gathered in discovery will allow Plaintiff to identify additional Defendants, as infringement monitoring is ongoing.

## **JURISDICTION AND VENUE**

6.      The jurisdiction of this Court is invoked under 17 U.S.C. §§ 101-1332 as the Plaintiffs' cause of action arises under the Copyright Act; 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1338(a) (exclusive jurisdiction for copyright cases).

7.      Venue in this District is proper under 28 U.S.C. §§ 1391(b) and/or 1400(a). Although the true identity of each Defendant is unknown to Plaintiffs at this time, on information

and belief each Defendant may be found in this District and/or a substantial part of the acts of infringement complained of herein occurred in this District. On information and belief, personal jurisdiction in this District is proper because each Defendant, without consent or permission of the Plaintiff exclusive rights owner, distributed and offered to distribute over the Internet copyrighted works for which Plaintiffs have exclusive rights. Such unlawful distribution occurred in every jurisdiction in the United States, including this one.

## BACKGROUND

8. BitTorrent is a modern method ("protocol") for distributing data via the Internet.

9. Traditional file transfer protocols involve a central server, which distributes data directly to individual users. Under such protocols, a central server can become overburdened and the rate of data transmission can slow considerably or cease altogether when large numbers of users request data from the server all at once. In addition, the reliability of access to the data stored on a server is largely dependent on the server's ability to continue functioning for prolonged periods of time under high resource demands.

10. In contrast, the BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data directly to one another. Under the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another.

11. In BitTorrent vernacular, individual downloaders/distributors of a particular file are called peers. The aggregate group of peers involved in downloading/distributing a particular file is called a swarm. A server which stores a list of peers in a swarm is called a tracker. A

computer program that implements the BitTorrent protocol is called a BitTorrent client. Each swarm is unique to a particular file.

12.     The BitTorrent protocol operates as follows. First, a user locates a file (a "torrent" file) that contains background information about the file the user wishes to download along with a list of trackers that maintain a list of peers in the swarm that is distributing that particular file. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the trackers listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to other peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

13.     Recent advances in the BitTorrent protocol have reduced the importance of trackers. The introduction of distributed hash tables allows participating peers to serve as "mini-trackers". The peer-exchange protocol allows peers to share information about other peers in the swarm, which was previously an exclusive function of trackers.

14.     The degree of anonymity provided by the BitTorrent protocol is extremely low. Because the protocol is based on peers connecting to one another, a peer must broadcast identifying information (i.e. an IP address) before it can receive data. Nevertheless, the actual names of peers in a swarm are unknown, as the users are allowed to download and distribute under the cover of their IP addresses. The BitTorrent protocol is an extremely popular method for transferring data. Studies have estimated that the BitTorrent protocol accounts for as much as half of all Internet traffic in certain parts of the world. The size of swarms for popular files can

reach into the tens of thousands of unique peers. A swarm will commonly have peers from many, if not every, state in the United States and several countries around the world.

15. The BitTorrent protocol is also an extremely popular method for unlawfully copying, reproducing and distributing files in violation of the copyright laws of the United States. A broad range of copyrighted albums, audiovisual files, e-books, photographs, software and other forms of media are available for illegal reproduction and distribution via the BitTorrent protocol.

16. Efforts at combatting BitTorrent-based copyright infringement have been stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and efficient means of transferring enormous quantities of data also acts to insulate it from efficient anti-piracy measures.

## INFRINGING CONDUCT

17. Defendants, without Plaintiff's authorization or license, intentionally downloaded torrent files, loaded the torrent files into BitTorrent clients, entered a BitTorrent swarm particular to Plaintiff's copyrighted creative works and reproduced and distributed the same to hundreds of third parties.

## COUNT I – COPYRIGHT INFRINGEMENT – ALL DEFENDANTS

18. Plaintiffs incorporate by reference allegations 1 through 17 above as if set forth fully herein.

19. At all times relevant hereto, Plaintiff has been the producer and owner of the photographic and audiovisual works copied, reproduced and distributed by Defendants via the

BitTorrent protocol. A log of IP address identifying each Defendant, as well as the corresponding torrent file swarm/copyrighted work in which Defendant was participating and the date and time of Defendant's activity is attached as <u>Exhibit A</u>. Defendants committed their infringing acts with actual and constructive knowledge of Plaintiff's exclusive rights. The Defendant's acts have contributed to the infringing, copying, duplication and reproduction of the Plaintiff's copyrighted creative work. Each act by Defendants that infringes on one of the Plaintiff's copyrights is the basis for a separate claim against the Defendants under the Copyright Act.

20. Defendants have never been authorized by Plaintiffs to reproduce or distribute the Plaintiff's copyrighted creative works.

21. Each of the creative works at issue in this action, including the applicable *Jordan Capri* and *Tawnee Stone* collections has an application for registration pending in the United States Copyright Office.

22. Each of Plaintiff's works is marked with Plaintiff's logo and trade name and is available only to subscribers of Plaintiff's websites, which contain a copyright notice and a statement that age verification records for all individuals are maintained in accordance with 18 U.S.C. § 2257. In addition, each of the torrent files used to access the copyrighted material was named in a manner that identified Plaintiff as the producer of the content. For example, a torrent file associated with one infringer was titled "Jordan Capri Complete Collection," a reference to Lightspeed Media's *Jordan Capri* brand.

23. Without authorization or consent, each Defendant copied, reproduced and distributed the Plaintiff's owned and copyrighted work as described on <u>Exhibit A</u>. Plaintiff is informed and believes that that each Defendant, participated and continues to participate in a BitTorrent swarm to reproduce and distribute to the public Plaintiff's copyrighted content. Each

Doe who is known to Plaintiff as of the date of this Complaint is identified on <u>Exhibit A</u>. By so doing, each Defendant has infringed on Plaintiff's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

24. Each Defendant knew or had constructive knowledge that their acts constituted copyright infringement.

25. Defendants' conduct was willful within the meaning of the Copyright Act, intentional and with indifference to the rights of Plaintiff.

26. Upon information and belief, the Defendant's acts as alleged are willful infringements or have irreparably harmed the Plaintiffs' copyrights and exclusive rights and threaten further infringements and further irreparable harm to the Plaintiffs' copyrights and exclusive rights. Further harm and injury to Plaintiffs is imminent, and the Plaintiffs are without an adequate remedy at law with respect to such harm and injury. Unless less Defendants' acts are enjoined, it is highly likely that Defendants will continue to reproduce and distribute Plaintiffs' copyrighted creative works.

27. As a result of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement pursuant to 17 U.S.C. §§ 101-1332.

## **JURY DEMAND**

28. Plaintiff hereby demands a jury trial in this case.

## **PRAYER**

**WHEREFORE**, Plaintiff respectfully requests judgment against each Defendant as follows:

1) That the Court enter a judgment against Defendants that they have infringed Plaintiff's rights in federally registered copyrights under 17 U.S.C. § 501 and that such infringement was willful;

2) That the Court issue injunctive relief against Defendants, and that Defendants and all others in active concert with Defendants, be enjoined and restrained from further violation of Plaintiffs' copyrights and required to destroy all copies of those copyrighted files in each Defendant's possession custody, or control;

3) For actual damages pursuant to 17 U.S.C. § 504;

4) For Plaintiff's costs; and

5) For such other and further relief as the Court deems appropriate.

-9-

                                                Respectfully submitted,

                                                Lightspeed Media Corporation

**DATED:** September 2, 2010

                                                By:   <u>/s/ John Steele</u>
                                                         John L. Steele (Bar No. 6292158)
                                                         Steele Law Firm, LLC
                                                         161 N. Clark St.
                                                         Suite 4700
                                                          Chicago, IL 60601
                                                          312-893-5888;  Fax 312-893-5604
                                                          john@steele-law.com
                                                          *Attorney for Plaintiff*