# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| LIGHTSPEED MEDIA CORPORATION ) | |
| ) | CASE NO.: 1:10-cv-05604 |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Blanche M. Manning |
| ) | Magistrate Judge Morton Denlow |
| DOE ) | |
| ) | |
| Defendant. ) | |
| ) | **JURY TRIAL DEMANDED** |
| ) | |

## SECOND AMENDED COMPLAINT

Plaintiff, by and through its attorneys and for its Second Amended Complaint against Defendant, avers as follows:

## INTRODUCTION

1.      This action has been filed by Plaintiff to combat the willful and intentional infringement of its copyrighted creative works and includes a civil claim for copyright infringement. Defendant, whose name Plaintiff expects to ascertain during discovery, illegally reproduced and distributed Plaintiff's copyrighted creative works via computer networks and upon information and belief, continues to do the same.

2.      Plaintiff seeks a permanent injunction, damages, and all other relief provided under the Copyright Act.

## PROCEDURAL HISTORY

3.      On September 2, 2010, Plaintiff filed its complaint against several anonymous Doe Defendants.

4. On September 15, 2010, the Court granted Plaintiff's motion to take discovery prior to the Rule 26(f) conference.

5. On November 11, 2010, the Court granted Plaintiff's motion to amend its complaint to add additional Doe Defendants.

6. On January 27, 2011, Movant Beau Rogers filed Motions to Quash, Dismiss for Lack of Personal Jurisdiction and for a Protective Order.

7. On February 24, 2011, Plaintiff filed an opposition brief to Rogers' various motions.

8. On March 31, 2011, the Court, *sua sponte*, severed all but one defendant from this action and quashed all outstanding subpoenas. In its Order, the Court instructed Plaintiff to amend its complaint to name Rogers as a defendant or dismiss this case in its entirety.

9. Pursuant to the Court's Order, Plaintiff submits this second amended complaint. Until Plaintiff actually receives a subpoena response from Charter Communications it is not appropriate to name Beau Rogers as a defendant. At the present time there is no reason to suspect that "Beau Rogers" is not a pseudonym. In copyright infringement cases nationwide the established process for pursuing cases against Internet-based copyright infringers is to collect infringing IP addresses, subpoena Internet Service Providers to ascertain the identities of the account holders associated with the IP addresses, conduct a limited forensic investigation to determine the identity of the infringer and then, if necessary, name the infringer as a defendant in a lawsuit. It would be inappropriate for Plaintiff to potentially misidentify the Doe Defendant self-named as "Beau Rogers" before receiving basic identifying information from the Doe Defendant's ISP.

## THE PARTIES

10. Plaintiff, Lightspeed Media Corporation (hereinafter "Lightspeed Media"), is a corporation organized and existing under the laws of the State of Arizona, with its principal place of business located in Phoenix, Arizona. Plaintiff is the exclusive owner of the copyrights at issue in this Complaint.

11. Lightspeed Media is a prominent company within the adult entertainment industry and has been the subject of articles in the national mainstream media. The company's founder and owner is a fixture at industry conferences and has delivered keynote addresses at the same. Lightspeed Media operates over 30 unique websites, employs several individuals and has invested significant capital in developing its content and its brand. Plaintiff is the owner of the copyrights and the pertinent exclusive rights under copyright in the United States in audiovisual works and photographs, including collections relating to its *Taylor Little* website properties.

12. Defendant's actual name is unknown to Plaintiff. Instead, Defendant is known to Plaintiff only by an Internet Protocol address (hereinafter "IP address"), which is a number that is assigned to devices, such as computers, that are connected to the Internet.

13. In the course of monitoring Internet-based infringement of its copyrighted content, Plaintiff observed an individual operating over IP address 71.94.75.211 at November 12, 2010 at 12:45 P.M. UTC directing infringing activity into the State of Illinois by offering to distribute and actually distributing Plaintiff's copyrighted work, "*Taylor Little POV*" to computers and individuals located in the State of Illinois. Plaintiff believes that the Defendant's true identity will be revealed in discovery, at which time Plaintiff will seek leave of the Court to amend this Complaint to state his identity, if necessary.

**JURISDICTION AND VENUE**

14. The jurisdiction of this Court is invoked under 17 U.S.C. §§ 101-1332 as the Plaintiff's cause of action arises under the Copyright Act; 28 U.S.C. § 1331 (federal question jurisdiction); and 28 U.S.C. § 1338(a) (exclusive jurisdiction for copyright cases).

15. Venue in this District is proper under 28 U.S.C. §§ 1391(b) and/or 1400(a). Although the true identity of the Defendant is unknown to Plaintiff at this time, on information and belief Defendant intentionally directed infringing activity into this District. Moreover, the records of Defendant's infringing activity are located in this District. Finally, the infringing activity occurred in this District because the computers that Defendant uploaded to were located in this District. Plaintiff's state of incorporation, Arizona, is a less desirable venue for this action because the investigation, potential witnesses, harm and activity occurred in this District and not in Arizona.

16. On information and belief, personal jurisdiction in this District is proper because Defendant, without consent or permission of the Plaintiff exclusive rights owner, distributed and offered to distribute via the BitTorrent protocol Plaintiff's copyrighted works to computers and individuals that Defendant knew or should have known were located in this District. The geolocation technology referenced in the Court's March 31, 2011 Order is equally available to Plaintiff and Defendant. If it is the case the geolocation technology is sufficient to identify the ultimate location of an Internet device, then Defendant was well aware that he was directing infringing activity into the State of Illinois.

**BACKGROUND**

17. BitTorrent is a modern method ("protocol") for distributing data via the Internet. The BitTorrent protocol differs significantly from the FastTrack protocol, which was at issue in

*LaFace Records, LLC v. Does 1-38*, No. 5:07-CV-298-BR, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008. Although both protocols are deemed to be "peer-to-peer" protocols, that is where the similarity ends. The FastTrack protocol involves the transfer of whole files. In other words, under the FastTrack protocol, a single peer connects with another peer and the entire file is transferred between the peers. BitTorrent, in contrast, allows users to break a single file into hundreds of pieces which are distributed amongst a swarm of hundreds to thousands of peers. Whereas the FastTrack protocol involves very limited interaction between peers, the BitTorrent protocol was designed to foster maximum peer interaction.

18. Traditional file transfer protocols involve a central server, which distributes data directly to individual users. Under such protocols, a central server can become overburdened and the rate of data transmission can slow considerably or cease altogether when large numbers of users request data from the server all at once. In addition, the reliability of access to the data stored on a server is largely dependent on the server's ability to continue functioning for prolonged periods of time under high resource demands.

19. In contrast, the BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data directly to one another. Under the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another.

20. In BitTorrent vernacular, individual downloaders/distributors of a particular file are called peers. The aggregate group of peers involved in downloading/distributing a particular file is called a swarm. A server which stores a list of peers in a swarm is called a tracker. A

computer program that implements the BitTorrent protocol is called a BitTorrent client. Each swarm is unique to a particular file.

21. The BitTorrent protocol operates as follows. First, a user locates a file (a "torrent" file) that contains background information about the file the user wishes to download along with a list of trackers that maintain a list of peers in the swarm that is distributing that particular file. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the trackers listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to other peers in the swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

22. Recent advances in the BitTorrent protocol have reduced the importance of trackers. The introduction of distributed hash tables allows participating peers to serve as "mini-trackers". The peer-exchange protocol allows peers to share information about other peers in the swarm, which was previously an exclusive function of trackers.

23. The degree of anonymity provided by the BitTorrent protocol is extremely low. Because the protocol is based on peers connecting to one another, a peer must broadcast identifying information (i.e. an IP address) before it can receive data. Nevertheless, the actual names of peers in a swarm are unknown, as the users are allowed to download and distribute under the cover of their IP addresses. The BitTorrent protocol is an extremely popular method for transferring data. Studies have estimated that the BitTorrent protocol accounts for as much as half of all Internet traffic in certain parts of the world. The size of swarms for popular files can

reach into the tens of thousands of unique peers. A swarm will commonly have peers from many, if not every, state in the United States and several countries around the world.

24. The BitTorrent protocol is also an extremely popular method for unlawfully copying, reproducing and distributing files in violation of the copyright laws of the United States. A broad range of copyrighted albums, audiovisual files, e-books, photographs, software and other forms of media are available for illegal reproduction and distribution via the BitTorrent protocol.

25. Efforts at combatting BitTorrent-based copyright infringement have been stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and efficient means of transferring enormous quantities of data also acts to insulate it from efficient anti-piracy measures.

26. A number of websites have been formed to enable individuals to find torrent files for copyrighted content. The most popular adult content torrent indexing site, until its recent demise, was *PureTna*. The manner in which these private sites operate is that a user must upload an equal or greater amount of data than he or she downloads. If a user does not do so, he or she risks being banned from the site. Upon information and belief the Defendant was a member of *PureTna* and offered to distribute Plaintiff's file to other users in order to gain, *inter alia*, more upload credit, which would allow him to download more of Plaintiff's copyrighted content.

**INFRINGING CONDUCT**

27. Defendant, without Plaintiff's authorization or license, intentionally downloaded torrent files, loaded the torrent files into BitTorrent clients, entered a BitTorrent swarm particular

to Plaintiff's copyrighted creative work and reproduced and distributed the same to hundreds of third parties.

## COUNT I – COPYRIGHT INFRINGEMENT

28. Plaintiff incorporates by reference the allegations in the foregoing paragraphs as if set forth fully herein.

29. At all times relevant hereto, Plaintiff has been the producer and owner of the photographic and audiovisual works copied, reproduced and distributed by Defendant via the BitTorrent protocol. Defendant committed his infringing acts with actual and constructive knowledge of Plaintiff's exclusive rights. The Defendant's acts have contributed to the infringing, copying, duplication and reproduction of the Plaintiff's copyrighted creative work. Each act by Defendant that infringes on one of the Plaintiff's copyrights is the basis for a separate claim against Defendant under the Copyright Act.

30. Defendant has never been authorized by Plaintiff to reproduce or distribute the Plaintiff's copyrighted creative works.

31. Each of the creative works at issue in this action, including the applicable *Taylor Little* file has an application for registration pending in the United States Copyright Office.

32. Each of Plaintiff's works is marked with Plaintiff's logo and trade name and is available only to subscribers of Plaintiff's websites, which contain a copyright notice and a statement that age verification records for all individuals are maintained in accordance with 18 U.S.C. § 2257. In addition, each of the torrent files used to access the copyrighted material was named in a manner that identified Plaintiff as the producer of the content. For example, a torrent file associated with Defendant was titled "Taylor Little" a reference to Lightspeed Media's *Taylor Little* brand.

33. Without authorization or consent, Defendant copied, reproduced and distributed the Plaintiff's owned and copyrighted work "*Taylor Little Pov*". Plaintiff is informed and believes that Defendant participated and continues to participate in a BitTorrent swarm to reproduce and distribute to the public Plaintiff's copyrighted content. By so doing, Defendant has infringed on Plaintiff's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

34. Defendant knew or had constructive knowledge that his acts constituted copyright infringement.

35. Defendant's conduct was willful within the meaning of the Copyright Act, intentional and with indifference to the rights of Plaintiff.

36. Upon information and belief, the Defendant's acts as alleged are willful infringements or have irreparably harmed the Plaintiff's copyrights and exclusive rights and threaten further infringements and further irreparable harm to the Plaintiff's copyrights and exclusive rights. Further harm and injury to Plaintiff is imminent, and Plaintiff is without an adequate remedy at law with respect to such harm and injury. Unless the Defendant's acts are enjoined, it is highly likely that Defendant will continue to reproduce and distribute Plaintiff's copyrighted creative works.

37. As a result of his wrongful conduct, Defendant is liable to Plaintiff for copyright infringement pursuant to the Copyright Act.

**JURY DEMAND**

38. Plaintiff hereby demands a jury trial in this case.

## **PRAYER**

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendant as follows:

1) That the Court enter a judgment against Defendant that he has infringed Plaintiff's rights in federally registered copyrights under 17 U.S.C. § 501 and that such infringement was willful;

2) That the Court issue injunctive relief against Defendant, and that Defendant and all others in active concert with Defendant, be enjoined and restrained from further violation of Plaintiff's copyrights and required to destroy all copies of those copyrighted files in each Defendant's possession custody, or control;

3) For actual damages pursuant to 17 U.S.C. § 504;

4) For Plaintiff's costs; and

5) For such other and further relief as the Court deems appropriate.

Respectfully submitted,

LIGHTSPEED MEDIA CORPORATION

**DATED:** April 11, 2011

By: /s/ John Steele_____
John Steele (Bar No. 6292158)
Steele Hansmeier PLLC
161 N. Clark St.
Suite 4700
Chicago, IL 60601
312-880-9160; Fax 312-893-5677
jlsteele@wefightpiracy.com
*Attorney for Plaintiff*